Elroy HENDRIX, Petitioner-Appellant,

v.

Harold J. SMITH, Superintendent, Attica Correctional Facility, and Robert Abrams, Attorney General, State of New York, Respondents-Appellees.

Docket No. 80–2239.

United States Court of Appeals, Second Circuit.

Argued Dec. 17, 1980.

Decided Jan. 19, 1981.

---

**114**

David Seth Michaels, The Legal Aid Society, Federal Defender Services Unit, New York City, for petitioner-appellant.

Tyrone Mark Powell, Asst. Atty. Gen. of the State of New York, New York City (Robert Abrams, Atty. Gen., Gerald J. Ryan, Asst. Atty. Gen., William S. Stancil, Law Apprentice, New York City, of counsel), for respondents-appellees.

* Honorable Charles M. Metzner, Senior District Judge of the United States District Court for

Before FEINBERG, Chief Judge, KEARSE, Circuit Judge, and METZNER, District Judge.*

METZNER, District Judge:

Elroy Hendrix appeals from an order of the United States District Court for the Eastern District of New York, 494 F.Supp. 314, denying his application for a writ of habeas corpus. He contends that the clearly inadmissible confession of a codefendant inculpating the appellant violated his rights of confrontation under *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). He further contends that this error was not harmless beyond a reasonable doubt.

Appellant was convicted in the Suffolk County Court of attempted murder, robbery in the first degree, and two counts of robbery in the second degree. On appeal the conviction for attempted murder was reversed and that charge dismissed. 56 A.D.2d 581, 391 N.Y.S.2d 186. The court affirmed the convictions on the remaining counts stating:

"The judgment of conviction should otherwise be affirmed, although there was error in the admission of a former codefendant's extrajudicial statements which inculpated defendant. In the context of this case, that error was harmless (see *People v. Crimmins*, 36 N.Y.2d 230, 367 N.Y.S.2d 213, 326 N.E.2d 787)."

On appeal to the New York State Court of Appeals that court held:

"While the trial court erred in allowing the officer to testify as to the former codefendant's extrajudicial statements, which inculpated defendant, the error was harmless beyond a reasonable doubt in view of the overwhelming proof of guilt. (*People v. Crimmins*, 36 N.Y.2d 230, 367 N.Y.S.2d 213, 326 N.E.2d 787.)" 44 N.Y.2d 658, 405 N.Y.S.2d 31, 376 N.E.2d 192.

Appellant's codefendant had previously pled guilty to second degree robbery

the Southern District of New York, sitting by designation.

and was not present at appellant's trial. The admission in evidence of the extrajudicial statement of the codefendant clearly violated the confrontation clause of the Sixth Amendment which is applicable to the states by reason of the due process clause of the Fourteenth Amendment. The *Bruton* rule comes into play, but as has been held on many occasions, the improper admission of such evidence is subject to the harmless error rule.

The definition of harmless error in the context of a *Bruton* situation is set forth in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) and *Schneble v. Florida*, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972). In *Chapman*, the Court held:

> "There is little, if any, difference between our statement in *Fahy v. Connecticut* [375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171] about 'whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction' and requiring the beneficiary of a constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained. We, therefore, do no more than adhere to the meaning of our *Fahy* case when we hold, as we now do, that before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." (368 U.S. at 24, 87 S.Ct. at 828).

In *Schneble*, the Court said:

> "Thus, unless there is a reasonable possibility that the improperly admitted evidence contributed to the conviction, reversal is not required. See *Chapman v. California*, 386 U.S. 18, 24 [87 S.Ct. 824, 828, 17 L.Ed.2d 705] (1967). In this case, we conclude that the 'minds of an average jury' would not have found the State's case significantly less persuasive had the testimony as to Snell's admissions been excluded. The admission into evidence of these statements, therefore, was

at most harmless error." 405 U.S. at 432, 92 S.Ct. at 1060.

It is therefore incumbent upon us to review the record in this case to determine whether the error was harmless when weighed against the totality of the proof offered against appellant.

On May 4, 1974, William J. Barner was tendered a surprise birthday party at his home. Among the people present were the codefendant John Anthony, Clinton Anthony, Henry Jefferson and the appellant. Jefferson had been convicted and served eight years in jail for killing a policeman. During the course of the evening Barner, Jefferson and the appellant left to purchase beer. On the way back to Barner's home, appellant showed Barner a small gun. Sometime thereafter Jefferson left the party with John Anthony. A short time later appellant also left the party. Jefferson then returned to Barner's home where he told the assembled guests that he had been robbed by the appellant and John Anthony. Jefferson was bleeding. He said that he had been shot by the appellant and that appellant and John Anthony had robbed him. This is the only eyewitness testimony about what happened between the time that Jefferson and John Anthony left the party together and Jefferson's return.

Near the conclusion of its case, the prosecution called Detective George Cooke of the Suffolk County Police Department as a witness. The prosecution elicited from Cooke, over defense objection, that John Anthony had given him a statement following Anthony's arrest which inculpated the appellant in the robbery of Jefferson. Cooke then testified that:

> "Basically and briefly, he indicated that Elroy Hendrix was with him, had the gun, and indicated to him prior to the robbery itself that he was planning on doing it, and that he in fact had the gun when they did do it, and he was the one that shot Jefferson. And also wounded, John Anthony was wounded. By one of the shots that were fired. And then both fled with the money after they had

ripped the pants pocket out and went back to the Bronx."

This brief summary was later expanded upon by the detective.

Absent Anthony's alleged statement, the only testimony that appellant was present at the time that the crime occurred was given by Jefferson. In fact, although appellant was supposed to have lost a shoe at the place of the holdup, and Anthony was supposed to have lost his glasses, a search of the area quite soon after the occurrence produced only Anthony's glasses.

In any event, the weakness of the prosecution's case, resting on the uncorroborated testimony of a witness previously convicted of killing a policeman, was obvious. There was no probative value to the Anthony statement except for corroboration. In this context it was critical to the people's case. The prosecution argued to the court when it offered the statement:

"The statement is not being offered for the truth contained in the statement. It's simply being offered as an exhibit or an objective indication that Detective Cooke obtained tying Elroy Hendrix to the commission of this crime."

It further stated:

"No, I'm renewing my offer that the statement itself which has been placed in evidence, if that is the best evidence of the objective evidence obtained tying Elroy Hendrix to the crime."

The court admitted the testimony and told the jury that Cooke was permitted to refer to the statement "for the fact that the conversation and/or statements were made by Mr. Anthony, not for the truthfulness of those statements."

This is not the type of limiting instruction referred to in *Bruton*. The common garden variety of that instruction is that the statement is admissible only against the declarant, and cannot in any event be used against any other defendant on trial. *Parker v. Randolph*, 442 U.S. 62, 73–74, 99 S.Ct. 2132, 2139, 60 L.Ed.2d 713 (1979); *United States v. Catalano*, 491 F.2d 268 (2d Cir.), cert. denied, 419 U.S. 825, 95 S.Ct. 42, 42 L.Ed.2d 48 (1974); *United States ex rel. Nelson v. Follette*, 430 F.2d 1055 (2d Cir. 1970), cert. denied, 401 U.S. 917, 91 S.Ct. 899, 27 L.Ed.2d 818 (1971). In this case Anthony was not on trial.

The summation by the defense was limited solely to the credibility of Jefferson and the absence of any corroboration that appellant was at the scene of the alleged crime.

In his summation the assistant district attorney argued:

"Detective Cooke also testified that he spoke to John Anthony on June 20th, when he was arrested. And he recited what John Anthony told him about the commission of the crime. And that corroborated in every essential detail Henry Jefferson's testimony as to where they went, to and from the L Shaped Lounge, what happened at Spring and Nassau Road. Is that additional corroboration for the testimony of Henry Jefferson?"

And finally, the court itself referred to the statement in its charge to the jury:

"And you may also consider the testimony of Detective Cooke who testified that he found no evidence to connect the defendant Elroy Hendrix to the crime except the statements of John Anthony on June 20th, 1974, to which he testified. That testimony was allowed to establish that the conversation between John Anthony and Detective Cooke took place, not to establish the truth of the statements by John Anthony."

Obviously the existence of a conversation between Anthony and Cooke was immaterial and irrelevant to the trial of appellant except for its content.

Furthermore, the court told the jury that unless they believed the testimony of Jefferson, they could not convict Hendrix of robbery. Jefferson's credibility was the crux of the case for the jury. It is clear that absent Anthony's statement, the independent evidence of appellant's guilt is not

so overwhelming that the conviction must stand. *Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); *United States v. Catalano, supra.*

In *Schneble v. Florida, supra,* the improperly admitted statement was harmless because of an admissible confession by the defendant himself, and, in addition, the statement was cumulative of admissible evidence. In *United States v. Cassino,* 467 F.2d 610, 623 (2d Cir. 1972), the admission of the statement was considered harmless because of the testimony of two other witnesses and agents who conducted surveillance of the complaining defendant. Similarly, in the *Nelson* case, *supra,* there were two eye-witnesses who positively identified the defendant as the perpetrator of the crime. Finally, in *United States v. Wingate,* 520 F.2d 309 (2d Cir. 1975), *cert. denied,* 423 U.S. 1074, 96 S.Ct. 858, 47 L.Ed.2d 84 (1976), the court pointed out that the statement was harmless because the government's case did not depend upon any inferences to be drawn from that statement.

The instant case does not fall within the boundaries of harmless error as drawn by the decisions in cases where a defendant's constitutionally protected rights have been invaded.

The judgment of the district court is reversed, with instructions to vacate the order appealed from and to enter a new order granting the writ unless the state accords defendant a new trial within sixty days from the date of the district court's order.